## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 11 2016, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Shana D. Tesnar | Kathleen M. Meek |
| Adler Tesnar & Whalin | Bowen & Associates, LLC |
| Noblesville, Indiana | Carmel, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| K.M., <br> *Appellant-Respondent,* <br><br> v. <br><br> A.M., <br> *Appellee-Petitioner* | August 11, 2016 <br><br> Court of Appeals Case No. <br> 29A02-1602-DR-258 <br><br> Appeal from the Hamilton Circuit Court <br><br> The Honorable Paul A. Felix, Judge <br><br> Trial Court Cause No. <br> 29C01-1403-DR-2047 |

**Baker, Judge.**

[1] K.M. (Mother) appeals the order of the trial court, which modified her parenting time to be contingent on her participation in mental health treatment. Finding that the trial court made no error by modifying Mother's parenting time, we affirm.

## Facts

[2] Mother and A.M. (Father) were married on April 10, 1999, and had four children together. In March 2014, Father filed a petition to dissolve the marriage.

[3] The trial court ordered an evaluation of each parent by a custody evaluator, Dr. Louis Pilipis. After completing the evaluation, Dr. Pilipis found that both parents had mental health issues, but that Mother's "mental health issues are severe and chronic in nature and require longstanding treatment." Appellee's App. p. 216. Dr. Pilipis found a 2013 incident particularly troubling, where Mother stabbed Father in the back with a pair of scissors. Dr. Pilipis also found that Mother frequently goes into a state of rage, and worried that if Father were not around to bear the brunt of this rage, it might be directed toward the children. Dr. Pilipis listened to several recordings that Father made of Mother's behavior. In one recording, Mother tells Father that one of their children "got his ass whooped" for watching television instead of cleaning. *Id.* at 195. Mother went on to refer to this child, who is developmentally disabled, as an "ungrateful brat," "selfish," a "leech," and a "resource drain." *Id.* Throughout this tirade, Mother threatened the child with further physical punishment.

[4]     After her evaluation, Dr. Pilipis recommended that Father be given physical custody of the children and that Mother "be court ordered to participate in mental health treatment, which should be frequent (i.e., at least twice a month) and ongoing (i.e., for at least 6 months). Parenting time should be contingent upon [Mother] adhering to court ordered treatment recommendations." *Id.* at 219.

[5]     The parties mediated a dissolution decree, and a final settlement agreement (the Agreement) was approved by the trial court on November 5, 2014. As part of this Agreement, the parties agreed that Father would have sole legal and physical custody of the children, and that Mother would have three hours of supervised parenting time per week, subject to further orders by the trial court.

[6]     On February 11, 2015, Father petitioned the trial court to modify the parenting time arrangement. He argued that several alleged incidents that had taken place since the settlement agreement indicated that Mother's untreated mental illness was resulting in harm to the children. He requested that the trial court modify the Agreement to adopt the recommendation of Dr. Pilipis that any future supervised visitation by Mother be contingent on her participating in psychiatric treatment. Appellant's App. p. 45.

[7]     On April 2, 2015, Father filed an addendum to this petition, which informed the trial court of the following. Mother had been using the Mending Fences agency for her supervised visitations. On February 24, 2015, Mother attempted to bring a concealed knife into the facility. When the staff questioned her, she

simply took the knife out to her car. Because this violated Mending Fences' policy on not bringing weapons to supervised parenting time, Mending Fences refused to conduct further supervised parenting time for Mother.

[8] The trial court held a hearing on the matter on October 27, 2015. At the hearing, Dr. Pilipis reiterated her recommendation that Mother's parenting time be contingent on her engaging in intensive mental health treatment. She expressed concern over the concealed knife incident, given that Mother had previously stabbed Father. Father testified that Mother had not attempted to contact him or the children since her visitation ended in February 2015. At the hearing, Mother said she did not want to participate in mental health therapy because she did not believe that she had any mental illness.

[9] Following the hearing, the trial court issued an order, which—among other issues that are not before us—modified Mother's parenting time,

> to reflect that all of Mother's supervised parenting time shall be contingent upon Mother complying with the Court ordered mental health treatment. However, Father does not have the right to discontinue the parenting time simply because he believes that Mother is not complian[t] with the Court ordered counseling. Only the Court can make that determination, and any decision by Father to discontinue Mother's parenting time can result in him being found in contempt.

Appellant's App. p. 20. Mother was ordered to attend six mental health treatment sessions over the course of six months. *Id.* On November 30, 2015,

Mother filed a motion to correct error, which the trial court denied on January 11, 2016. Mother now appeals.

## Discussion and Decision

Mother argues that the trial court erred by making her continued supervised visitation contingent on her engaging in mental health treatment.

Restriction or denial of parenting time is governed by Indiana Code section 31-17-4-2, which provides as follows:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Indiana recognizes that the right of a noncustodial parent to visit his or her children is a "precious privilege." *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006). Even though the statute uses the word "might," courts have long held that a noncustodial parent's right to visit his or her child is important enough that it should not be restricted unless it "would" endanger the child's physical health or emotional development. *See Stewart v. Stewart*, 521 N.E.2d 956, 960 n.3 (Ind. Ct. App. 1988). A party who seeks to restrict a parent's visitation rights bears the burden of presenting evidence justifying such a restriction. *Farrell v. Littell*, 790 N.E.2d 612, 616 (Ind. Ct. App. 2003).

[12] Mother points to *Farrell* for the proposition that the trial court was required to make specific findings of fact before modifying the noncustodial parent's parenting time. However, we have previously distinguished that language to only apply where "*no* parenting time was granted to the noncustodial parent," not where "parenting time was ordered to be supervised and within certain parameters designed to protect the best interests of" the child. *J.M. v. N.M.*, 844 N.E.2d 590, 599-600 (Ind. Ct. App. 2006) (emphasis original). Therefore, since the trial court in this case explicitly refused to terminate Mother's parenting time, the trial court was not required to make specific findings of fact.

[13] Generally speaking, parenting time decisions are committed to the sound discretion of the trial court. *In re B.J.N.*, 19 N.E.3d 765, 769 (Ind. Ct. App. 2014). A trial court errs when its decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.* Where, as here, the trial court did not enter specific findings of fact, a general judgment standard applies. *Id.* We may affirm a general judgment on any theory supported by the evidence at trial. *Id.*

[14] We find ample evidence to support the judgment of the trial court. The trial court was presented with the work of the custody evaluator, Dr. Pilipis, who confirmed that Mother was suffering from borderline personality disorder and bipolar disorder. Mother has been recorded being physically and verbally abusive to the children. She has previously stabbed Father, and was caught bringing a knife to a supervised visitation with her children. All of this evidence would support a finding by the trial court that, absent mental health treatment,

parenting time would endanger the children's physical health or significantly impair the child's emotional development.

[15] The trial court's decision is abundantly justified by the facts and circumstances before it—it ordered Mother, who has been diagnosed with mental illness and has a history of family violence, to attend six mental health therapy sessions in order to continue supervised visitations. The trial court made no error in this regard.

[16] The judgment of the trial court is affirmed.

Vaidik, C.J., and Najam, J., concur.